UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:11-CV-109-H

TERRI GOODLETT                                                                                   PLAINTIFF

v.

AETNA LIFE INSURANCE COMPANY                                                   DEFENDANT

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Terri Goodlett, brought this action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132, to seek reversal of a determination by Defendant, Aetna Life Insurance Company ("Aetna"), denying her claim for long-term disability benefits. Both parties have moved for a judgment and the Court has reviewed the administrative record, making the case ripe for decision. *See Wilkins v. Baptist Health Care Sys., Inc.*, 150 F.3d 609, 619 (6th Cir. 1998) (instructing district courts to only consider evidence presented to the claim administrator and finding the summary judgment and bench trial mechanisms inapposite to ERISA actions); *Guzy v. Ameritech Corp.*, 50 F. Supp. 2d 706, 709 (E.D. Mich. 1999) (noting ERISA actions to be decided on motions for entry of judgment to reverse or affirm the administrator's denial of plaintiff's claim).

I.

A district court applies the arbitrary and capricious standard of review in an ERISA action in which the benefit plan grants the plan administrator "discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). If a plan administrator operates under a possible or actual conflict of interest, then such conflict does not alter the standard of review, but must be

weighed in the Court's determination of whether there is an abuse of discretion. *Id.* Here, the disability benefits plan under which Plaintiff filed her claim clearly grants Defendant "full and complete discretion to interpret and construe the Plan," which includes "determinations on claims for benefits under the Plan . . . [and] the full and complete discretion to make findings of fact." Administrative R. 1428. Thus, the Court will review Defendant's denial of Plaintiff's claim under the arbitrary and capricious standard, "the least demanding form of judicial review of administrative action," *Davis v. Ky. Fin. Cos. Ret. Plan*, 887 F.2d 689, 693 (6th Cir. 1989) (internal quotation marks and citations omitted), bearing in mind Aetna's dual role as plan administrator and payor of the benefits. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008). So long as a reasoned explanation based on the evidence could justify the denial of the claim, Aetna's decision was not arbitrary or capricious. *Davis*, 887 F.2d at 693.

II.

Plaintiff processed reimbursement claims for Praxair Inc., a sedentary job function in which she spent about ninety percent of her time sitting. She began receiving short-term disability benefits under the Praxair Disability Plan, administered by Defendant, in June 2009 in connection with complications from her pregnancy. After giving birth, those benefits continued due to her carpal tunnel treatments and back pain. She filed a claim for long-term disability benefits, but withdrew that claim when her physician cleared her to return to work effective November 23, 2009. However, Plaintiff was unable to return to her job and continued receiving short-term disability benefits until they expired on December 21, 2009.

Plaintiff notified Defendant that she did not return to work and wished to reinstate her claim for long-term disability benefits. An unexpected hospitalization for pneumonia for one

week in late December delayed her filing of paperwork necessary for processing her claim. Once completed, Defendant submitted Plaintiff's claim and supporting documentation to Dr. Dennis Mazal, a specialist in internal medicine, and Dr. Anne MacGuire, a specialist in rheumatology, for their review. Both reviewing physicians also spoke with Plaintiff's treating physicians. Dr. Mazal concluded that Plaintiff was unable to perform the essential functions of her job from December 22, 2009[1] through January 7, 2010. Dr. MacGuire concluded that Plaintiff was not functionally impaired.

On February 3, 2010, Defendant informed Plaintiff via letter that she was entitled to long-term disability benefits only for the period of December 22, 2009 through January 7, 2010. The letter noted that the medical records she submitted and the opinions expressed by her doctors to the reviewing physicians could only support a benefits award in connection to her aspiration pneumonia. Defendant acknowledged that Plaintiff had been diagnosed with a number of ailments, including bilateral carpal tunnel, arthritis, fibromyalgia, cervical and lumbar degenerative disk disease, diabetes and hypertension. However, Plaintiff's file lacked any documentation of these conditions impairing her ability to perform her job function.

Plaintiff appealed Defendant's decision by way of a March 23, 2010 letter, arguing that her past work in medical billing required constant use of her hands and prolonged sitting, which would be "a physical impossibility for her given the state of her hands and spine." Administrative R. 207. She further supported her claim with medical records, including MRI and EMG scans, documenting her conditions. Still, none of these records indicated any limitations or restrictions precluding Plaintiff from engaging in any particular activity or job-

---

[1] Although Plaintiff's hospitalization for pneumonia began December 19, 2009, she was still receiving short-term disability benefits. December 22, 2009 was the first day she could be eligible for long-term disability benefits.

related function. After reviewing the supplemented file and engaging five additional physicians to review Plaintiff's claim, Defendant upheld its initial determination that Plaintiff was not entitled to any long-term disability benefits beyond January 7, 2010.

III.

Plaintiff makes a number of assertions in support of her motion to reverse Defendant's denial of benefits. She fails, however, to cite significant portions of the administrative record in support of those conclusions. For example, at page four of Plaintiff's memorandum, she argues that the administrative record includes opinions, records, and sworn statements of nine of Plaintiff's treating physicians "who agree, generally and specifically, that Plaintiff has restrictions and limitations that would leave her unable to engage in full time employment." Were this statement supported, it would significantly bolster Plaintiff's argument that Defendant's denial of benefits was arbitrary and capricious. However, Plaintiff cites only to a two-page portion of the record – an EMG report in which Dr. Valerie Waters finds "evidence of entrapment of this median nerve at the carpal ligament bilaterally" and that "[t]here is no electrophysiologic evidence of cervical radiculopathy." Administrative R. 101-02. The inferential leap between those statements and a conclusion that Dr. Waters, let alone eight other doctors, believes Plaintiff suffers physical limitations precluding her from full time employment is far too great for this Court to make. Plaintiff makes a similar claim in the next paragraph of her memorandum and the citation to the record is equally unsupportive.

Elsewhere in her memorandum, Plaintiff claims again that "[a]ll her treating physicians state either she cannot work in any occupation or place restrictions and limitations on her that are so severe it precludes employment." Pl.'s Mem. 7. With no citations to examples of such

statements in the record, the Court reviewed the record as a whole and found nothing to support this claim. Plaintiff also notes that records from her physical therapy "chart a disability index of 76% based on range of motion restrictions and overall pain levels." The records cited indicate that this is a "neck disability index" and there is no explanation of what this figure means or how it translates to a finding that Plaintiff cannot perform her job function.

Put simply, Plaintiff argues that it was arbitrary and capricious for Defendant to not draw its own conclusion that Plaintiff was disabled based on her diagnoses, even though her own physicians did not draw such conclusions or provide any opinions as to impairments that would preclude any activities, job-related or otherwise. To the contrary, Defendant's decision was more than rational in light of the disability plan's provisions and the evidence in the record. *See Miller v. Metro. Life Ins. Co.*, 925 F.2d 979, 984 (6th Cir. 1991) (quoting *Daniel v. Eaton Corp.*, 839 F.2d 263, 267 (6th Cir. 1988)).

Plaintiff also argues that even if one of Plaintiff's conditions was not by itself debilitating, it was arbitrary and capricious for Defendant not to consider the combined effects of her many health problems. Although this conception of disability resulting from the combined effects of many conditions is plausible, no treating or reviewing physician made any finding supporting such a conclusion. Defendant's failure to reach a conclusion that Plaintiff's own physicians did not reach was not arbitrary and capricious.

Courts have upheld plan administrators' denials of benefits even when that decision went against opinions of treating physicians, so long as the decision was rational and based on substantial evidence. *See, e.g.*, *Bauer v. Metro. Life Ins. Co.*, 397 F. Supp. 2d 856, 865-66 (E.D. Mich. 2005) (citing *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 830 (2003) (holding

5

that ERISA does not require plan administrators to give special deference to opinions of treating physicians)). Here, Plaintiff cannot even point to a medical opinion contrary to Defendant's position that the totality of her conditions did not preclude her from performing her job.

The strongest evidence supporting Plaintiff's disability claim comes not from any records Plaintiff submitted in her initial claim or in her appeal, but from the notes Dr. Wendy Weinstein, a physician reviewing the claim file on appeal, took from her July 30, 2010 conversation with Dr. Leslie Dunaway, Plaintiff's family physician. The notes indicate that Dr. Dunaway reported that Plaintiff had chronic pain and that he "did not see [her] going back to work." Administrative R. 273. Dr. Dunaway did not document a decrease in range of motion, loss of muscle strength, or any inability to do sedentary work. In contrast, Dr. Larry Zhou, who treated Plaintiff's fibromyalgia, told a reviewing physician that he could not support her claim of disability. Because Dr. Dunaway's statement, which was not part of Plaintiff's claim or supporting documentation and was unsupported by specific findings from an examination, is substantially outweighed by the opinions of other treating physicians and reviewing physicians, Defendant's decision was not arbitrary and capricious.

IV.

Finally, the Court has considered the conflict of interest created by Defendant's dual role as plan administrator and payor of benefits, but finds nothing in the record to suggest that this factor should outweigh the substantial evidence upon which Defendant based its denial of the disability claim. *See Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 115 (2008); *Lanier v. Metro. Life Ins. Co.*, 692 F. Supp. 2d 775, 786 (E.D. Mich. 2010).

Plaintiff has requested attorney's fees, noting that a party need not be a "prevailing party"

to be awarded such fees, so long as it achieves "some degree of success on the merits." Pl.'s Memo. 11 (citing *Hardt v. Reliance Standard Life Ins. Co.,* 130 S. Ct. 2149, 2156 (2010)). Plaintiff has not achieved any degree of success on the merits and the Court will not award attorney's fees.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendant's motion for judgment affirming claim administrator's decision is SUSTAINED.

IT IS FURTHER ORDERED that Plaintiff's motion for judgment on the merits is DENIED.

cc: Counsel of Record